JOHN PETERSON, Master of Steamer Septima *vs.* H. A. P. CARTER, President of Board of Health.

MANDAMUS. BEFORE HARRIS, C.J.

MARCH, 1881.

A steamer, with Chinese passengers, two of whom had the small-pox, arrived at Honolulu, and the passengers were landed and placed in quarantine: the Board of Health declined to allow the vessel to depart, until a bond was given to cover all expenses incurred by the Board of Health: the Master admitted his liability for the two sick passengers, but claimed that the ship was not liable for the others:

Held, the steamer was liable for the expenses of all the passengers landed, and the action of the Board of Health, in requiring a bond, was proper.

DECISION OF HARRIS, C.J.

The steamship Septima arrived at Honolulu on the 13th day of February, 1881, twenty-four days from Canton in China, having on board 711 passengers, two of whom at least were sick with small-pox at the time of their arrival. The ship was immediately placed in quarantine, and the sick people taken from her. The port physician, Doctor Hutchinson, seeing that the ship was a small one, the weather very warm, and the ship exceedingly crowded and filthy on account of the large number of passengers, and that it was impossible to cleanse the ship with

so large a number of people on board, was of the opinion that, besides the small-pox, there was great danger a fever would be generated, which would be fatal to the passengers and dangerous generally to the public health, and gave warning thereof to the health authorities on shore, as well as to those having charge of the ship and passengers.

The result was that temporary accommodations were provided by persons interested in the ship or passengers (not by the Government) on the small island at the entrance of the harbor, known as the quarantine ground, and the passengers were landed, by the order of the President of the Board of Health, on the 23d of February. The passengers, as well as the ship, have since remained in quarantine, under the supervision of the Board of Health and are so at the time of this hearing. Since the arrival of the ship, two more cases have appeared among the passengers, and one of the crew is now sick of the small-pox, on board the ship.

The petition sets forth that they are ready and willing to pay all expenses which may have been incurred by the Board of Health, for the two persons brought into the harbor, sick, on board said ship, but that the defendant declines to allow the Collector-General of Customs to enter and clear the ship, unless ten thousand dollars be deposited as security, or in lieu thereof a bond of indemnity in the penal sum of ten thousand dollars, conditioned that said Board of Health shall be repaid and indemnified for all moneys which shall or may be expended, by the said Board of Health, for any of the said passengers. It further appears that there is a small amount of cargo on board of said ship, destined for this port. It is indisputably in evidence, that at the time of landing the passengers, as aforesaid, and before and several times since, those in charge of the interests of the vessel were told by the health authorities that the vessel would be held responsible for all expenses incurred.

The petitioner requests that the respondent may be ordered to allow him to enter and clear his vessel at the Custom House, on receiving the sum which may have been expended for the

two persons, actually sick, on board his ship, at the day of her arrival, and, in the course of the argument, admits that the ship is likewise liable to pay whatever expenses may have occurred for purifying and disinfecting her.

Respondent says he is willing to permit the ship to be entered and cleared, provided that he shall receive a good and sufficient bond to reimburse the Board of Health for all costs and expenditure necessary for landing, supporting and sustaining the passengers who came by the said ship, as well as the cost of guarding and disinfecting her.

The law applicable to this case is as follows: Sec. 296 Civil Code. "The Board of Health and its agents may at all times cause any vessel arriving, when such vessel, or the cargo thereof, shall, in their opinion, be foul or infected, so as to endanger the public health, to be removed to the quarantine ground, and to be thoroughly purified at the expense of the owners, consignees, or persons in possession of the same; and they may also cause all persons arriving in, or going on board of any such infected vessel, or handling such infected cargo, to be removed to some place of safety, there to remain under their orders."

This section clearly gives the authority to the Board of Health to remove *all* persons, arriving in an infected vessel, to a place of safety, there to remain under their orders. It likewise gives authority to cause the vessel to be purified at the expense of the owners; if to be purified, then to do all things necessary in the premises; and it was necessary to remove this large crowd of passengers. This work was clearly done for account of the ship, and, by Sec. 298, all expenses incurred on account of any person, vessel or goods, under any quarantine regulations, shall be paid by such person, vessel, or owner of such vessel or goods respectively. The construction sought to be placed on this section by the counsel for the petitioner is, that the ship has to pay for what is done for her, and human beings to pay for what is done for them. In this view of the case, the ship would not be liable for the two sick men for whose care they offered to pay, or for the care of her crew; the fact is that all the work is done for the ship, but instead of compelling her to remain here, and keep her passen-

gers on board, the passengers are placed where they can be better cared for. By this section of the law, where expenses are incurred for any person outside of and irrespective of any ship, then they must look to the person, but it does not nullify the responsibility of the ship for her passengers and her crew.

Sec. 306 reads as follows: In case any moneys are expended by the Board of Health, for any sick person brought into this Kingdom, in any vessel from abroad, it shall be the duty of said Board, or its agent, to demand the same from the master of the vessel in which such sick person was brought, and the Collector of Customs shall not grant a clearance to such vessel, until the same is paid. The master of such vessel shall be liable for the amount of the moneys thus expended.

The petitioner says that this Statute limits the liability of the ship to those persons who are actually suffering from the disease, that is, to the two persons above alluded to. Properly speaking, in view of the public health, all these persons are sick; that is to say, they are all infected and liable to break out with the small-pox and communicate it to others.

All the sections must be taken together, and the obvious and only conclusion from them all is that the ship is liable for all the expenses which have been or may be incurred by reason of the contagious disease with which her passengers were infected on her arrival at this port.

I must therefore decline to grant the order asked for at present. But inasmuch as the matter is now in the hands of the Court, I will grant such an order whensoever a good and sufficient bond may be filed to indemnify and reimburse the Board of Health for all moneys that have been or may be expended in the premises; and I do not think that the penal sum of ten thousand dollars is unreasonable in view of the fact that only so much will be obliged to be paid on the said bond as may be shown to be actually expended.

*Mr. Hartwell,* for petitioner.

*Messrs. Castle & Hatch,* for the sub-charterers, Hin Wo Tai.

*Mr. Davidson,* for respondent.

Honolulu, March 4th, 1881.